## UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **WITTEN ROOFING, L. L. C.** | **CIV. ACTION NO. 3:23-01438** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LIBERTY MUTUAL INSURANCE** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. # 14] filed by Plaintiff Witten Roofing, L.L.C.   The motion is opposed. For reasons set forth below, it is recommended that the motion be DENIED.

### Background

On July 31, 2023, Plaintiff Witten Roofing, L.L.C. ("Witten Roofing") filed the instant suit for damages against Defendant Liberty Personal Insurance Company (improperly named in the Petition as "Liberty Mutual Insurance" (hereinafter, "Liberty").   (Petition).   The Petition alleges that, on April 9, 2021, severe weather conditions damaged the roof and interior of Jack Bateman's home in Monroe's Garden District.   *Id*.   At the time of the incident, Bateman's home was covered by a residential insurance policy issued by Liberty.   *Id*.

Bateman apparently engaged Witten Roofing to make repairs to his home necessitated by the weather event, and, on July 18, 2022, assigned his claim against Liberty for the repair costs to Witten Roofing.   *Id*.   The next day, July 19, 2022, Witten Roofing forwarded the assignment to Liberty.   *Id*.   On September 27, 2022, Witten Construction, L.L.C., transmitted to Liberty a $95,854.69 repair estimate for the Bateman home.   (Decl. of Nicole Reese; Witten Const.

1

Estimate; Notice of Removal, Exhs. B & B-2).

On an unspecified date, Liberty initially evaluated the damage to the Bateman property at $28,465.67.   (Petition, ¶ 9).   Thereafter, the parties proceeded with the appraisal process under the policy, which culminated with a February 22, 2023 appraisal award in the amount of $82,723.68, issued by a claim representative and estimator, "engaged by" Liberty.   *Id*., ¶¶ 6-7.

According to Witten Roofing, on May 12, 2023, Liberty paid a total of $58,630.79 "in recognition of the value of the claim."   *Id*., ¶ 8.   According to Liberty, however, as of October 10, 2023, i.e., one day prior to removal, it had issued payments totaling $55,072.54 under the policy's dwelling coverage.   (Decl. of Nicole Reese; Notice of Removal, Exh. B).

Witten Roofing contends that Liberty continues to refuse to pay the full amount of the appraisal award, which represents a good faith evaluation of the damage to the subject property. (Petition, ¶ 10).   Witten Roofing further alleges that Liberty's refusal to timely adjust and pay the claim in good faith was arbitrary, capricious, unreasonable, and without probable cause.   *Id*., ¶ 11.   Consequently, in addition to seeking recovery on the underlying policy claim for contractual damages, Witten Roofing requests an award of penalties and reasonable attorney's fees against Liberty pursuant to Louisiana Revised Statutes §§ 22:1892 and 22:1973.   *Id*.

On October 11, 2021, Liberty removed this matter to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.   (Notice of Removal).   Two weeks later, on October 25, 2023, Liberty filed a motion for summary judgment seeking dismissal of Witten Roofing's claims, in their entirety, on the basis that they are time-barred, or, in the alternative, dismissal of the claims for bad faith penalties, damages, and fees.   *See* MSJ [doc. # 11].   That motion remains pending before the District Judge.

On November 6, 2023, the undersigned reviewed the record and noted that Liberty had not properly alleged the nature of its organizational structure for purposes of citizenship. *See* Nov. 6, 2023 Order [doc. # 13]. Accordingly, the court granted Liberty leave to file an amended notice of removal to correctly set forth the citizenship of the Liberty entities. *Id*.

On November 13, 2023, Liberty filed an amended notice of removal to clarify that the Liberty entities were New Hampshire and Massachusetts corporations with their principal places of business in Massachusetts. (Amend. Notice of Removal [doc. # 20]).

Meanwhile, on November 9, 2023, Witten Roofing filed the instant motion to remand the case to state court for lack of subject matter jurisdiction on the basis that the amount in controversy did not exceed the jurisdictional minimum at the time of removal. Witten Roofing also requested an award of attorney's fees and costs associated with the improvident removal.

On December 4, 2023, Liberty filed its opposition to the motion to remand. (Liberty Opp. Brief [doc. # 23]). Witten Roofing did not file a reply, and the time to do so has passed. *See* Notice of Motion Setting [doc. # 16]. Accordingly, the matter is ripe.

## Law

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id*. Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary. *Howery v. Allstate*

*Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted).   The removal statutes are strictly

construed in favor of remand.   *Manguno, supra*.

Liberty invoked this court's subject matter jurisdiction via diversity, which requires

complete diversity of citizenship between plaintiff and defendant, and an amount in controversy

greater than $75,000.   28 U.S.C. § 1332(a).   Witten Roofing does not dispute that the parties

are completely diverse, and, in the wake of Liberty's amended notice of removal, neither does

the court.[1]   Instead, Witten Roofing contests that the amount in controversy exceeds $75,000.

Pursuant to the Federal Courts Jurisdiction and Venue Clarification Act of 2011

("JVCA"), the removal statute now specifies that

> [i]f removal of a civil action is sought on the basis of the jurisdiction conferred by
> section 1332(a), the sum demanded in good faith in the initial pleading shall be
> deemed to be the amount in controversy, except that--
>
> **(A)** the notice of removal may assert the amount in controversy if the initial
>      pleading seeks—
>
> *          *          *
>
> **(ii)** a money judgment, but the State practice either does not permit demand for a
> specific sum or permits recovery of damages in excess of the amount demanded . .
> .

28 U.S.C. § 1446(c)(2)(A)(ii).

In Louisiana state court cases, plaintiffs are prohibited from alleging a monetary amount

of damages in the petition.   LA. CODE CIV. P. ART. 893 (as amended by Acts 2004, No. 334).[2]

---

[1] Witten Roofing's members are Louisiana domiciliaries, whereas the Liberty corporations are
citizens of New Hampshire and/or Massachusetts.   (Amend. Notice of Removal).

[2] Albeit, plaintiffs are required to allege when their damages are insufficient to support federal
jurisdiction.   LA. CODE CIV. P. ART. 893A.   However, courts have recognized that a party cannot
create federal jurisdiction by omission, which is just as likely the result of inadvertence, rather than

4

Thus, the removing defendant must assert the amount in controversy in the notice of removal, which "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S. Ct. 547, 554 (2014).   Here, of course, Witten Roofing *does* challenge Liberty's amount in controversy allegation, thereby triggering the requirement for both sides to submit proof and for the court to decide by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied.  *Id*.

To satisfy the preponderance standard, the removing defendant may support federal jurisdiction "in either of two ways:   (1) by demonstrating that it is facially apparent from the petition that the claim likely exceeds $75,000 or (2) by setting forth *the facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount."  *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 868 (5th Cir. 2002) (citations and internal quotation marks omitted); *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 774 (5th Cir. 2003); *accord St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir. 1998); *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 314 (5th Cir. 2022).

Removal cannot be supported by conclusory allegations, *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 n.7 (5th Cir. 1999), and "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  *Manguno, supra*. Moreover, a defendant must do more than assert that a state law *might* allow a plaintiff to recover more than what is pled; a defendant must set forth evidence that establishes that the actual

---

by design.  *See, e.g.*, *Lilly v. Big E Drilling Co.*, Civ Action No. 07-1099, 2007 WL 2407254 (W.D. La. Aug. 20, 2007).

amount in controversy exceeds \$75,000.   *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th

Cir. 1995) (*superseded by amendment on other grounds*, TEX   R. CIV. P. 47).

If the removing defendant establishes by a preponderance of the evidence that the amount

in controversy is greater than the jurisdictional amount, remand is proper only if the plaintiff then

"demonstrate[s] to a legal certainty that [it] can not recover more than the jurisdictional amount."

*In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009).   Plaintiff's "legal certainty"

obligation may be satisfied, *inter alia*, if it files a binding stipulation or affidavit.   *De Aguilar,*

*supra*.

A court may consider post-removal affidavits as long as the amount in controversy at the

time of removal was ambiguous and the affidavit/stipulation relates to the amount in controversy

at the time of removal.[3]   *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000);

*Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).   Thus, "if it is facially

apparent from the petition that the amount in controversy exceeds \$75,000 at the time of

removal, post-removal affidavits, stipulations, and amendments reducing the amount do not

deprive the district court of jurisdiction."   *Gebbia, supra* (citations omitted).

### Analysis

The value of the claim for coverage under an insurance policy determines the amount in

controversy, so long as the value of the claim does not exceed the value of the policy.   *Easley v.*

*Republic Fire & Cas. Ins. Co.*, Civ. Action No. 20-0483, 2020 WL 7344614, at *3 (M.D. La.

---

[3]  When resolving a motion to remand, it is axiomatic that courts look at jurisdictional facts as they existed when the case was removed.  *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F. 2d 559, 565 (5th Cir. 1993), *abrogated on other grounds by Marathon Oil Co. v. A.G. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998) ("*ANPAC*").

Nov. 4, 2020), *R&R adopted,* 2020 WL 7342440 (M.D. La. Dec. 14, 2020) (citations omitted).

In addition to the amount sought under the policy limits, the court may consider allegations for

recovery of bad faith penalties and attorney's fees in determining whether the amount in

controversy is satisfied.   *Id*. (citations omitted).

 In this case, the parties use different figures to calculate the amount of the remaining

policy claim.   Liberty contends that the contractual amount in dispute is $35,914.15, which it

calculates by starting with the initial $95,854.69 Witten Construction estimate and then

subtracting prior payments of $55,072.54 and the policy's $4,868 deductible.[4]   The foregoing is

based, in part, on a declaration and evidence submitted by Liberty.

 Witten Roofing, however, relies solely on the figures set forth in its Petition to arrive at a

remaining balance of $30,092.89, which it derives by starting with the $82,723.68 appraisal

award and then subtracting the $52,630.79 in payments that it received previously from Liberty.

Nonetheless, for the limited purpose of this motion, Witten Roofing is willing to accept Liberty's

calculation that the remaining balance owed on the contractual claim is $35,914.15.[5]

(M/Remand, Memo., pg. 3).

 At this stage of the proceedings, the court need not resolve whether the remaining

balance due under the policy is $35,914.15 or $30,092.89 because, either way, when added to the

---

[4] Under the policy, losses stemming from wind/hail damage are subject to a two percent
deductible of the $243,400 dwelling coverage, i.e., $4,868.   (Policy; Notice of Removal, Exh. B-
1).

[5] "Although parties may not *consent* to jurisdiction, a party may *stipulate or admit* to *facts*
underlying jurisdiction."   *Durbois v. Deutsche Bank Nat'l Tr. Co. as Tr. of Holders of AAMES
Mortgage Inv. Tr. 20054 Mortgage Backed Notes*, 37 F.4th 1053, 1060 (5th Cir. 2022).

claims for penalties and fees, *see* discussion, *infra*, the sum exceeds the jurisdictional minimum.

As stated above, Witten Roofing also seeks to recover penalties against Liberty pursuant to Louisiana Revised Statutes §§ 22:1892 and 1973.   However, an insured is limited to recovery under the statute that provides for the greater penalty.   *See Williams v. Sec. Plan Fire Ins. Co.*, 222 So.3d 200, 204 (La .App. 5th Cir. 2017) (citation omitted).   Moreover, to receive more than the default $5,000 penalty under § 22:1973, the insured must show that it incurred actual damages from the breach of the insurer's duties.   *See Zydeco's II, LLC v. Certain Underwriters at Lloyd's, London*, 356 So.3d 345, 387–88 (La. App. 5th Cir. 2021), *writ denied* 332 So.3d 665 (La. 2022).

Here, the Petition does not set forth any specific damages stemming from Liberty's failure to timely pay the claim.   Moreover, Witten Roofing concedes that it does not believe that it can prove any actual damage as a result of Liberty's breach.   (Pl. Memo., pg. 5). Consequently, it is unsurprising that Liberty has opted to analyze the value of Witten Roofing's penalty claim exclusively under § 22:1892.   (Opp. Memo., pg. 6).   Under the circumstances, the court will do the same.

Section 22:1892 provides, in pertinent part, that,

[a]ll insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.

*          *          *

[f]ailure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . .   within thirty days after receipt of satisfactory proofs of loss of that claim . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars,

8

whichever is greater, payable to the insured, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.

(LA. R.S. § 22:1892(A)(1) and (B)(1)(a)).

Again, however, the parties disagree on the calculation of the potential penalty. Somewhat paradoxically, they advocate for penalties that are against their respective pecuniary interests, should Witten Roofing prevail on liability.   For example, Witten Roofing calculates its available penalty as $17,957.08, or one-half of the agreed-upon value of its remaining contractual claim ($35,914.15).   Conversely, Liberty estimates the potential penalty to be either $31,260.51 or $24,695.01, which it calculates by starting with the Witten Construction damages estimate of $95,854.69 or the appraisal award of $82,723.68, before subtracting its purported initial payment of $28,465.67, together with the $4,868 deductible, and then taking one-half the difference.

In discussing the pre-revision version of § 22:1892, which, at the time, was enacted as § 22:658, the Fifth Circuit remarked that, "[t]he statutory text makes clear that an insurer is entitled to a reduced penalty where it has paid some portion of the insured's claim:   in such a case, the 'amount paid' is subtracted from the 'amount found to be due' before applying the requisite percentage." *French v. Allstate Indem. Co.*, 637 F.3d 571, 588 (5th Cir. 2011) (citation omitted).   However, the court hastened to add that,

> [e]qually clear, though not explicit in the statute, is that the reduced penalty provision applies if (and only if) the insured's partial payment complies with the statutory requirements—namely, it is tendered "within thirty days after receipt of satisfactory proofs of loss from the insured."   Indeed, to conclude otherwise would effectively read out the statute's time-limit requirement—such an interpretation would, for instance, permit insurers who had untimely paid 100 percent of a

9

insured's claim to avoid statutory penalties.

*Id.* (internal citations omitted).[6]

In this case, the parties appear to agree that, according to the Petition and supporting evidence, the amount due is either the initial $95,854.69 Witten Roofing estimate or the $82,723.68 appraisal award.   Witten Roofing then reduces this sum by $54,258.01 that Liberty says it paid.   Liberty, however, reduces the sum by $28,465.67, which is what it initially evaluated the claim to be worth.

Upon consideration, the court disagrees with any proposed reduction from the amount due for any payments made or tendered by Liberty for the purpose of assessing the amount in controversy at the time of removal.   Witten Roofing alleged in the Petition that Liberty "failed to appropriately adjust the clam where *initially* it only *evaluated* the claim to be worth $28,467.07."   (Petition, ¶ 9) (emphasis added).   However, there is no allegation that Liberty actually *paid or tendered* the $28,467.07 within 30-days of satisfactory proof of loss.   To the contrary, Witten Roofing plainly alleged that Liberty "failed to appropriately adjust the claim . . ."   Moreover, Witten Roofing alleged that on May 12, 2023, Liberty "paid a total of $58,630.79 in recognition of the value of the claim."   (Petition, ¶ 8).   If Liberty paid a *total* of $58,630.79 *on May 12, 2023*, then it could not have paid any sums previously.   Furthermore, the May 12, 2023 payment, itself, was untimely because it was made more than 30 days after the February

---

[6] *See also Eaux Holdings LLC v. Scottsdale Ins. Co.*, Civ. Action No. 20-1582, 2022 WL 951529, at *1 (W.D. La. Mar. 29, 2022), *amended,* 2022 WL 2393605 (W.D. La. July 1, 2022), and *appeal dismissed* No. 22-30455, 2023 WL 371645 (5th Cir. Jan. 19, 2023) (subtracting only the *timely* payment from the penalty calculation); *Defrancesch Family P'ship, LLC v. Nationwide Mut. Ins. Co.*, Civ. Action No. 22-3527, 2023 WL 2986373, at *3 (E.D. La. Apr. 17, 2023) (any penalty under the insurance code cannot be based on amounts that were *timely* paid to the insured).

22, 2023 appraisal award.   Accordingly, the untimely payment(s) cannot be credited for the purpose of reducing the potential penalty.

In the absence of any reduction for the untimely payments, the potential penalty under § 22:1892 is fifty percent of the $95,854.69 or $82,723.68 amount due, i.e., $47,927.35 or $41,361.84.   Adding the smaller of these penalty figures, $41,361.84, to the "stipulated" contractual claim of $35,914.15 produces an amount in controversy of $77,275.99, *at the time of removal*,[7] even before consideration of attorney's fees.   Alternatively, if the smaller potential penalty of $41,361.84 is added to the lower contractual damage figure of $30,092.89, it produces an amount in controversy of $71,454.73, before attorney's fees.

It is manifest that attorney's fees are part of the matter in controversy calculus when they are provided for by state statute or contract.   *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990) (citations omitted); *Manguno*, 276 F.3d at 723.   Witten Roofing asserted a claim for attorney's fees, and § 22:1892 plainly authorizes a reasonable attorney's fee in association with a penalty award.   *See* Petition, ¶ 11; LA. R.S. § 22:1892; and *Manguno, supra* ("[Plaintiff's] petition alleges facts that, if proven, would give rise to a claim for attorney's fees under LA. R.S. 22:658 . . .").

Witten Roofing argues that its claim for attorney's fees is too speculative and indefinite to support any significant valuation.   However, when combined with the claim for contractual damages and the bad faith penalty, Witten Roofing's potential attorney's fee claim need only

---

[7] "The amount in controversy is not proof of the amount the plaintiff will recover but an estimate of the amount that will be put at issue in the course of the litigation."   *Durbois v. Deutsche Bank Nat'l Tr. Co. as Tr. of Holders of AAMES Mortgage Inv. Tr. 20054 Mortgage Backed Notes*, 37 F.4th 1053, 1057 (5th Cir. 2022) (internal quotation marks and quoted source omitted).

exceed $3,545.27 to meet the jurisdictional threshold.   Whether one uses the lodestar method or a contingent fee tied to a percentage of the recovery, it is manifest that the potential attorney fee award in this case suffices to push the amount in controversy over $75,000.   *See Edwards v. Nw. Mut. Life Ins. Co.*, Civ. Action No. 16-0871, 2016 WL 7077883, at *5 (W.D. La. Oct. 11, 2016), *R&R adopted,*  2016 WL 7108587 (W.D. La. Dec. 5, 2016) (collecting cases) (attorney's fee award of at least $16,101 under § 22:1892 is neither speculative nor a mere possibility); *Washington v. Liberty Mut. Fire Ins. Co.*, Civ. Action No. 12-0746, 2012 WL 3096046, at *3–4 (W.D. La. July 30, 2012) (attorney's fee award of at least $12,556 under § 22:658 is neither a mere possibility, nor speculative).

In sum, whether evidence attached to the notice of removal is considered or not, Liberty has established by a preponderance of the evidence that the amount in controversy exceeded $75,000 at the time of removal.   *See White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (at the time of removal, it was apparent from the face of the petition and the evidence presented by defendant that the amount in controversy exceeded $75,000).   Moreover, Witten Roofing has not argued, let alone shown to a legal certainty that its recovery cannot exceed $75,000.

### Conclusion

For the above-assigned reasons, the undersigned finds that this court enjoys subject matter jurisdiction, via diversity.   28 U.S.C. § 1332.   Accordingly,

IT IS RECOMMENDED that the motion to remand and associated request for an award of fees and costs[8] [doc. # 14] filed by Plaintiff Witten Roofing, L.L.C. be DENIED.

---

[8] An order of remand may require payment of costs, expenses, and attorney's fees incurred as a result of removal.   28 U.S.C. § 1447(c).   However, in light of the undersigned's recommended denial of the motion to remand, the statutory prerequisite for an award of costs, expenses, and/or

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 24th day of January, 2024.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

---

fees is absent.